# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 5, 2013

## STATE OF TENNESSEE v. SYLVESTER SMITH

**Appeal from the Criminal Court for Shelby County**
**No. 09-02013     James C. Beasley, Jr., Judge**

---

**No. W2012-00259-CCA-R3-CD  - Filed November 4, 2013**

---

A Shelby County jury convicted the Defendant-Appellant, Sylvester Smith, of aggravated kidnapping, a Class B felony, and two counts of aggravated burglary, a Class C felony.  See T.C.A. §§ 39-13-304, -14-403 (2010).  The  trial court merged the two counts of aggravated burglary and sentenced Smith as a Range III, persistent offender to fifteen-years imprisonment with a forty-five percent release eligibility for the aggravated burglary conviction.  For the aggravated kidnapping conviction, Smith was sentenced as a Range II, multiple offender to twenty-years at one hundred percent release eligibility.  The sentences were to be served consecutively for a total effective sentence of  thirty-five years in the Tennessee Department of Correction.  On appeal, Smith argues that the trial court erred in: (1) failing to properly instruct the jury on aggravated kidnapping pursuant to State v. White; (2) sentencing him based on insufficient evidence; (3) excluding Smith's written statement to the police as inadmissible hearsay; (4) admitting into evidence hearsay statements in violation of Smith's right to confrontation; (5) permitting improper impeachment of Smith based on prior convictions; (6) imposing excessive sentences; and (7) depriving Smith of his due process rights based on cumulative error.  Discerning no reversible error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Stephen Bush, District Public Defender; Phyllis Aluko (on appeal) and Trent Hall (at trial), Assistant Public Defenders, Memphis, Tennessee, for the Defendant-Appellant, Sylvester Smith.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Pamela Fleming, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

This case concerns the aggravated kidnapping and aggravated burglary convictions of the Defendant-Appellant, Sylvester Smith, in Shelby County, Tennessee. A count for attempted rape was nolle prossed prior to jury deliberation since the victim was unavailable to testify. On August 8, 2011, the case proceeded to jury trial.

**Trial.** Brenda Pendleton lived next door to the elderly victim, Ms. Mattie Ford, in the 300 block of Richmond Avenue in Memphis. Pendleton testified she had known the victim since she was a little girl. On October 3, 2008, Pendleton was sitting on her front porch and talking to Smith, whom she did not know for long. She went into her house because Smith "looked like he was up to something." When Pendleton returned outside, she saw Smith sitting on the victim's front porch. Pendleton said the victim asked Smith to leave the porch and then went into her house. Next, Pendleton saw Smith follow the victim into her home. Pendleton said her neighbor across the street, Linda Selmon, asked her to investigate the victim's home after they both heard the victim "hollering." Once she was at the victim's front door, Pendleton knocked on the window. Pendleton testified that the victim's house had two front doors. The outer iron security door was locked, but the inner wooden door was open. Looking through the front door window, she saw Smith with his hand over the victim's mouth, and she told him to "turn her loose." Smith responded that he was not doing anything. Pendleton saw Smith put the victim down on the couch. According to Pendleton's testimony, the victim was yelling to be released while Smith continued to push her on the couch. Pendleton thought she saw a gun in Smith's hand. Then she saw the victim grab a knife from under the couch. At this point, Smith ran out the door, nearly knocking Pendleton over. She testified that the victim was upset and out of breath when she came to the front door. The victim told Pendleton that "[Smith] was trying to rape her." Pendleton reported what happened when the police arrived at the scene. She went to the station later in the same afternoon to provide a statement. Pendleton also positively identified Smith from a photo lineup. At trial, she identified exterior and interior photographs of the victim's home. In her written statement to the police, Pendleton did not mention seeing a gun in Smith's hand. She did report that Smith told her he had a gun in his pocket. Pendleton said that the victim was currently in a nursing home and had been there since the October 3, 2008 incident.

Linda Selmon testified that she lived across the street from the victim, who was eighty-eight years old at the time of the incident. On the day in question, she noticed an unknown man, later determined to be Smith, sitting alone on the victim's porch. When

Selmon exited her home, Smith was staring at her intently. Upon her return, Selmon heard the victim loudly "screaming and hollering" for help and for Smith to leave her alone. At that point, Selmon ran over to the victim's front door where she was joined by Pendleton. They saw Smith inside the house "attacking" and "messing" with the victim, who was still screaming. They could not get the locked door open, and Selmon called the police, who arrived in ten or fifteen minutes. According to Selmon, Smith stood at the door staring at her and Pendleton. About four minutes after seeing the neighbors, Smith opened the door and ran out. Selmon made the following observations after seeing the victim:

> [The victim] was upset and she was crying and trembling and shaking and her house dress she had on was torn loose from the front down and the shoulder part was hanging off of one arm, and the bottom part was kind of open, coming up near the center. And she had one sock on.

The victim told Selmon "that [Smith] was in there trying to rape her and said he was trying to kill her." Selmon reported what happened to the police and provided a statement in the same afternoon, though she was unable to positively identify Smith from a photo lineup.

Officer Stephen Medlin of the Memphis Police Department testified that on October 3, 2008, he responded to an attempted criminal assault call at the victim's address. When he arrived at the scene, Officer Medlin spoke with the victim, who was "[d]istraught, shaken up." He also spoke with Pendleton and Selmon. Pendleton told Officer Medlin what she observed inside the victim's home. Officer Medlin said the victim's grandson was arrested for shooting Smith a few blocks from the scene.

Sergeant Stephen Roach of the Memphis Police Department testified that he was the case officer assigned to the incident. When he showed Ms. Pendleton a photo lineup on the day of the incident, she identified Smith as the perpetrator. Sergeant Roach also interviewed Smith when he was in custody. According to Sergeant Roach, Smith stated that on October 3, 2008, he was in the victim's house checking on a leak in her water heater, while the victim was on her front porch. Smith said there was a knock at the front door, and he saw two women when he went to answer the door. He left after that. When Sergeant Roach asked him why there was a knock at the door if the victim was on the porch, Smith did not answer the question.

Neither Smith nor the victim testified at trial. Based on the above proof, the jury convicted Smith of one count of aggravated kidnapping and two counts of aggravated burglary based on alternative theories. An October 7, 2011 sentencing hearing was rescheduled because Smith requested certified judgment sheets.

**October 14, 2011 Sentencing Hearing.** At the October 14, 2011 sentencing hearing, after hearing sentencing arguments from the State, the trial court entered the presentence report into evidence. The court also merged the two counts of aggravated burglary and noted that for sentencing purposes, the charging count would be "aggravated burglary with the intent to commit an assault." Smith once again requested certified dispositions, which had not been attached to the file. The sentencing hearing was continued.

**November 22, 2011 Sentencing Hearing.** At the November 22, 2011 sentencing hearing, ten certified copies of prior felony convictions were entered into evidence. After hearing arguments from counsel, the trial court considered the purposes of sentencing. See T.C.A. § 40-35-102 (2010). The trial court also noted the sentencing considerations found in the Tennessee Criminal Sentencing Reform Act. See id. § 40-35-103 (2010). After reviewing the presentence report and the certified copies of convictions, the court sentenced Smith as a Range III, persistent offender to fifteen-years imprisonment with a release eligibility of forty-five percent for the charge of aggravated burglary. See id. §§ 40-35-107, -501(e) (2010). The trial court applied the enhancement factors that Smith had "a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range" and that the "victim of the offense was particularly vulnerable because of age or physical or mental disability[.]" Id. § 40-35-114(1), (4) (2010). The court also found that Smith "had no hesitation about committing a crime when the risk to human life was high[.]" Id. § 40-35-114(10) (2010). In applying these three enhancement factors, the court placed "much more emphasis" on the first two factors. The trial court did not find any applicable mitigating factors. The court noted, "I think confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct; that confinement is also necessary to avoid depreciating the seriousness of this offense . . . and the length of time for this offense is justly deserved." See id. § 40-35-102 (2010).

For the aggravated kidnapping conviction, the court applied two enhancement factors, that Smith had a prior criminal history and that the victim was particularly vulnerable, and did not find any mitigating factors. See id. § 40-35-114(1), (4) (2010). The court emphasized the victim's age and Smith's criminal history finding "that [Smith] has a long history of criminal convictions and behavior, and that anything other than the maximum sentence would not deter others like [Smith] from continuing to commit this offense." Smith was sentenced as a Range II, multiple offender to twenty-years at one hundred percent release eligibility. See id. §§ 40-35-106, -501(i)(1)(D) (2010). Therefore, the trial court imposed maximum sentences in the range for Smith's aggravated burglary and aggravated kidnapping convictions. See id. § 40-35-106(c), -107(c), -112(b)(2), (c)(3) (2010). At the conclusion of sentencing, the court made the following oral findings:

-4-

The Court further finds in reviewing the history of Mr. Smith, the facts of this case, that Mr. Smith is a dangerous offender whose behavior indicates little or no regard for human life; that he has no hesitation about committing a crime when the risk to human life is high; that the circumstances surrounding the commission of this offense are aggravated based upon the victim's age and her mental issues.

Further, that confinement for an extended period of time is necessary to protect society from the defendant's unwillingness to lead a productive life and the defendant's resort to criminal activity in furtherance of an anti-societal life-style [sic]. He's been in and out of custody for the last 30-odd years. The aggregate length of the sentence reasonably relates to the offense to which [Smith] stands convicted. The Court feels that the sentences should be served consecutively and will so order.

The effective sentence was thirty-five-years imprisonment. Smith timely filed a motion for new trial, which the court denied. He then filed a timely notice of appeal.

## ANALYSIS

**I. White Instruction**. On appeal, Smith contends that the trial court erred by failing to properly instruct the jury on aggravated kidnapping in violation of his due process rights. Specifically, Smith argues that he is entitled to a new trial because the jury was not instructed to find whether the removal or confinement was essentially incidental to the accompanying felony as required under State v. White, 362 S.W.3d 559 (Tenn. 2012). In response, the State maintains that the error was harmless beyond a reasonable doubt because the proof was clear that Smith completed his aggravated burglary prior to grabbing and restraining the victim. Thus, the State asserts that no reasonable jury would have determined that the subsequent restraint was incidental to the aggravated burglary. We conclude that the absence of the White instruction was harmless beyond a reasonable doubt.

Prior to March 9, 2012, when the Tennessee Supreme Court filed its opinion in State v. White, this court conducted an appellate due process review when a defendant challenged dual convictions involving a form of kidnapping and a separate felony. This due process analysis developed over time in cases such as State v. Anthony, 817 S.W.2d 299 (Tenn. 1991), State v. Dixon, 957 S.W.2d 532 (Tenn. 1997), and its progeny. See, e.g., State v. Cozart, 54 S.W.3d 242 (Tenn. 2001), State v. Fuller, 172 S.W.3d 533 (Tenn. 2005), and State v. Richardson, 251 S.W.3d 438 (Tenn. 2008). In White, the supreme court expressly overruled this separate due process analysis conducted by the appellate courts. See White, 362 S.W.3d at 578. The court concluded that the Tennessee kidnapping statutes were not

meant to apply to a removal or confinement of a victim that was "essentially incidental" to the accompanying felony and that this inquiry was a factual question for a properly instructed jury to resolve. Id. at 576-78. This is because the "essentially incidental" language in Anthony, which previously informed appellate due process review, was now a part of a material element of kidnapping. Id. at 578 ("[W]e are merely providing definition for the element of the offense requiring that the removal or confinement constitute a substantial interference with the victim's liberty."). Accordingly, to protect the defendant's due process rights, trial courts must instruct juries to determine "whether the removal or confinement is, in essence, incidental to the accompanying felony or, in the alternative, is significant enough, standing alone, to support a conviction." Id. at 578.

Based on the court's holding in White, the Tennessee Pattern Jury Instruction Committee adopted the following jury instruction to guide the trial courts:

> To find the defendant guilty of [the charged kidnapping offense], you must also find beyond a reasonable doubt that the removal or confinement was to a greater degree than that necessary to commit the offense(s) of _____ as charged [or included] in count(s) _____. In making this determination, you may consider all the relevant facts and circumstances of the case, including, but not limited to, the following factors:
>
> (a) the nature and duration of the alleged victim's removal or confinement by the defendant;
>
> (b) whether the removal or confinement occurred during the commission of the separate offense;
>
> (c) whether the interference with the alleged victim's liberty was inherent in the nature of the separate offense;
>
> (d) whether the removal or confinement prevented the alleged victim from summoning assistance, although the defendant need not have succeeded in preventing the alleged victim from doing so;
>
> (e) whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and

(f) whether the removal or confinement created a significant danger or increased the alleged victim's risk of harm independent of that posed by the separate offense.

Unless you find beyond a reasonable doubt that the alleged victim's removal or confinement exceeded that which was necessary to accomplish the alleged _____ and was not essentially incidental to it, you must find the defendant not guilty of [the charged kidnapping offense].

7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 8.01-.03, 8.05 (footnotes omitted) (citing White, 362 S.W.3d at 576-81).

A year and a half after its ruling in White, the supreme court recently provided further guidance in State v. Cecil, ___ S.W.3d ___, No. M2011-01210-SC-R11-CD, 2013 WL 4046608 (Tenn. Aug. 12, 2013). The court made it clear that the principles in White applied to all pending appellate actions as of the date of the White decision and to all actions arising thereafter. Cecil, ___ S.W.3d ___, at *8. Having clarified the scope of application of the White ruling, the court concluded that the absence of a specific jury instruction as required under White constitutes error. Id. at *9. Moreover, "'[t]he failure to instruct the jury on a material element of an offense is a constitutional error subject to harmless error analysis.'" Id. at *10 (quoting State v. Faulkner, 154 S.W.3d 48, 60 (Tenn. 2005)). "The existence of a non-structural constitutional error requires reversal unless the State demonstrates beyond a reasonable doubt that the error is harmless." State v. Rodriguez, 254 S.W.3d 361, 371 (Tenn. 2008). To determine if an error is harmless, the reviewing court must consider "whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Id. (quoting State v. Allen, 69 S.W.3d 181, 190 (Tenn. 2002)) (internal quotation marks omitted). The court in Cecil emphasized that "the touchstone of this inquiry is whether a rational trier of fact could interpret the proof at trial in different ways." Cecil, ___ S.W.3d ___, at *10 (citing White, 362 S.W.3d at 579).

In the absence of a required White instruction, the resulting kidnapping conviction must be reversed and remanded for a new trial where the evidence was subject to differing interpretations and the proper jury instructions could have changed the outcome of the trial. See, e.g., State v. Reginald W. Davis, No. M2011-02075-CCA-R3-CD, 2012 WL 5947439, at *6 (Tenn. Crim. App. Nov. 16, 2012) and State v. Bobby A. Raymer, No. M2011-00995-CCA-R3-CD, 2012 WL 4841544, at *7 (Tenn. Crim. App. Oct. 10, 2012). However, the omission of a White instruction does not require an automatic reversal where the record supports a finding that the error was harmless beyond a reasonable doubt. Cecil, ___ S.W.3d ___, at *10 (citing as examples State v. Curtis Keller, No. W2012-00825-CCA-R3-CD, 2013 WL 3329032 (Tenn. Crim. App. June 27, 2013) and State

v. Jonathan Kyle Hulse, No. E2011-01292-CCA-R3-CD, 2013 WL 1136528 (Tenn. Crim. App. Mar. 19, 2013)). Therefore, a reviewing court should determine from the record whether the proof is unequivocal that the victim's removal or confinement was not essentially incidental to the accompanying offense and that the jury's verdict would have been the same if it had been properly instructed. Cecil, ___ S.W.3d ___, at *12.

In the case sub judice, Smith was convicted of aggravated kidnapping and aggravated burglary with intent to commit assault. The trial took place from August 8-10, 2011, before the decision in White was filed. The jury charge in the record tracked the statutory language for aggravated kidnapping and its lesser-included offenses but did not specifically instruct the jury to find whether the removal or confinement of the victim was more than necessary to commit the offense of aggravated burglary. For Smith's aggravated kidnapping conviction to be affirmed on appeal, "the State must prove that the removal or confinement was to a greater degree than that necessary to commit the offense of [aggravated burglary with intent to commit assault]." White, 362 S.W.3d at 580.

We conclude that the State has demonstrated that the instructional error was harmless beyond a reasonable doubt and that the verdict would have been the same even if the White jury instruction had been provided. Based on the evidence in the record, no rational trier of fact could conclude that Smith's actions in struggling with and restraining the victim were essentially incidental to the crime of aggravated burglary. We agree with the State that the aggravated burglary was completed when Smith entered into the victim's home without her consent and with intent to commit a felony or assault therein. See, e.g., State v. Cowan, 46 S.W.3d 227, 234 (Tenn. Crim. App. 2000), perm. app. denied (Tenn. Apr. 16, 2001) ("Aggravated burglary is a property offense and is completed upon entry into the habitation."); see also State v. Ralph, 6 S.W.3d 251, 255 (Tenn. 1999) ("Consummation of the intended felony, theft, or assault is not necessary to complete the crime of burglary."). Therefore, the physical struggle between Smith and the victim took place in the living room after the aggravated burglary had already occurred. In denying Smith's motion for a new trial based on insufficiency of the evidence, the trial court, acting as the thirteenth juror, found it compelling that Smith locked the door after entering the home:

> But the key to the Court was the fact that once he got her inside that residence, he locked the door behind him where nobody could come to her aid because when these ladies testified that they responded and saw him on top of her, they couldn't get the door open and he wouldn't open the door when they were demanding that he open the door. . . . After all the proof was presented the jury returned a verdict finding [Smith] guilty, not only of aggravated burglary, but aggravated kidnapping and as thirteenth juror I concur in that verdict.

The record supports a finding that there was proof beyond a reasonable doubt that Smith substantially interfered with the victim's liberty. The facts show that the front door was locked, preventing the victim from leaving and preventing her neighbors from helping her. According to witness testimony, Smith also had a physical struggle with the victim in her living room where he restrained her and forced her onto the couch. The victim was "screaming and hollering" during the struggle and appeared upset and disheveled when the police arrived. The removal or confinement occurred after the separate offense of aggravated burglary took place. Physically struggling with and restraining the victim were not inherent in the nature of aggravated burglary. The removal or confinement was meant to prevent the victim from summoning assistance and also increased the victim's risk of harm independent of that posed by the offense of aggravated burglary. Consequently, no rational trier of fact could interpret these acts as essentially incidental to the act of aggravated burglary. Therefore, the absence of a <u>White</u> instruction in this case may be classified as error that is harmless beyond a reasonable doubt. Accordingly, Smith is not entitled to relief on this issue.

Having concluded that the record supports a finding, in accordance with due process principles, of dual convictions involving a form of kidnapping and an accompanying felony, we consider the separate, but related, issue of the sufficiency of the evidence.

**II. <u>Sufficiency of the Evidence</u>**. Smith contends that the evidence is insufficient to support his convictions for aggravated burglary and aggravated kidnapping. Specifically, he argues that the evidence is insufficient to establish that he entered the victim's home without her consent and with the intent to commit a felony or assault. Additionally, Smith argues that there was insufficient evidence to establish that he substantially interfered with the victim's liberty or that he intended to terrorize her. The State maintains that the evidence is sufficient for a reasonable jury to find Smith guilty of aggravated burglary and aggravated kidnapping. We agree with the State.

When an appellate court reviews the sufficiency of the evidence, it is well established law that the State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. <u>State v. Bland</u>, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is

direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)).

The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659. A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

"In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing Duchac v. State, 505 S.W.2d 237, 241 (Tenn. 1973); Marable v. State, 313 S.W.2d 451, 456-58 (Tenn. 1958)). However, "[t]he jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting Marable, 313 S.W.2d at 457). This court may not substitute its inferences for those drawn by the trier of fact in cases involving circumstantial evidence. State v. Sisk, 343 S.W.3d 60, 65 (Tenn. 2011) (citing State v. Lewter, 313 S.W.3d 745, 748 (Tenn. 2010)). We note that the standard of review "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Hanson, 279 S.W.3d 265, 275 (quoting State v. Sutton, 166 S.W.3d 686, 689 (Tenn. 2005)); State v. Carruthers, 35 S.W.3d 516, 557 (Tenn. 2000). The court in Dorantes specifically adopted the standard for circumstantial evidence established by the United States Supreme Court in Holland:

> "Circumstantial evidence . . . is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more."

Dorantes, 331 S.W.3d at 380 (quoting Holland v. United States, 348 U.S. 121, 140 (1954)).

A person commits aggravated burglary when he or she, without the effective consent of the owner, enters a habitation with intent to commit a felony, theft or assault. See T.C.A. §§ 39-14-402(a)(1), -403 (2010). According to the jury charge in Smith's trial, the jury was required to find that the State proved beyond a reasonable doubt the following elements:

(1)     that the defendant entered a habitation (or any portion thereof); and

(2)     that the defendant entered with the intent to commit an Aggravated Kidnapping or an Assault; and

(3)     that the defendant acted without the effective consent of the owner; and

(4)     that the defendant acted either intentionally, knowingly, or recklessly.

The jury convicted Smith of two counts of aggravated burglary based on alternative theories, which the trial court merged into one conviction. On appeal, Smith argues that the evidence is insufficient to establish that he entered the victim's home without her consent and with the intent to commit a felony or assault. Smith contends that because neither he nor the victim testified at trial, the jury was prevented from considering whether Smith had permission to enter the habitation to check the water heater inside. However, eyewitness testimony from the next-door neighbor, Brenda Pendleton, established that Smith was sitting on the victim's porch and that the victim asked him to leave the porch before entering her home. Rather than leaving, Smith followed the victim through her front door. Testimony from both neighbors established that they heard the victim screaming and that they subsequently witnessed Smith and the victim engaging in a physical struggle in the living room. It is the prerogative of the jury to weigh and evaluate the evidence and to draw inferences from it. See Odom, 928 S.W.2d. at 23. Here, the jury accredited the testimony of the State's witnesses and favored the prosecution's theory. See Bland, 958 S.W.2d at 659. Furthermore, the State is not required to disprove theories that support a defendant's innocence. Dorantes, 331 S.W.3d at 380 ("Significantly, the Supreme Court has specifically rejected the notion 'that the prosecution [i]s under an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt.'") (quoting Jackson, 443 U.S. at 326). Accordingly, we conclude that the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Smith committed aggravated burglary with intent to commit assault.

We have concluded above, through a harmless error analysis, that the record supports a finding of dual convictions on due process grounds. We now review the aggravated kidnapping conviction based on the sufficiency of the evidence. To sustain a conviction for

aggravated kidnapping, the State had to prove beyond a reasonable doubt that Smith knowingly and unlawfully removed or confined the victim so as to interfere substantially with her liberty and with the intent to terrorize her. See T.C.A. §§ 39-13-302(a), -304(a)(3) (2010). In challenging his conviction, Smith contends that there was insufficient evidence to establish that he substantially interfered with the victim's liberty. To support this claim, Smith argues, for instance, that the victim was able to retrieve a knife from under the couch. He also maintains that the State failed to provide any evidence that he acted with intent to terrorize the victim. We conclude that there was sufficient evidence to support the jury's verdict.

Viewed in the light most favorable to the State, the proof introduced at trial demonstrated that after Smith entered the victim's home, the front door was locked such that the victim was prevented from leaving and others were prevented from assisting her. Here, two neighbors, Brenda Pendleton and Linda Selmon, testified that they heard the victim screaming for help and demanding to be released. When the women ran to the victim's front porch to investigate, the front security door was locked, though they could see Smith forcing the victim onto the couch. Pendleton saw Smith cover the victim's mouth with his hand. When Pendleton told Smith to release the victim, he continued to restrain her and denied any wrongdoing. As the victim screamed to be released, Smith continued to push her down on the couch. It was only after the police were called and after the victim grabbed a knife that Smith opened the door and fled the scene. As we have already concluded in the preceding White analysis, the record supports a finding beyond a reasonable doubt that Smith substantially interfered with the victim's liberty. While the prior analysis was in regards to the independent criminal significance of Smith's acts, we now determine that those acts were sufficient to sustain a conviction for aggravated kidnapping.

To the extent that Smith challenges the sufficiency of the evidence establishing that he acted with intent to terrorize the victim, we are not persuaded that he has met his burden to overcome the presumption of guilt. See Bland, 958 S.W.2d at 659. At Smith's trial, the jury charge defined "terrorize" as "to use or threaten violence to intimidate or cause panic[]" and "violence" as "evidence of physical force unlawfully exercised so as to damage, injure, or abuse. Physical contact is not required to prove violence." See also 7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 8.02 (establishing pattern jury instructions for aggravated kidnapping). The jury charge also provided definitions for "knowingly" and "intentionally" that tracked the statutory language. See T.C.A. § 39-11-106 (18), (20) (2010). The evidence was sufficient for the jury to reasonably infer that Smith acted knowingly or intentionally during the physical struggle with the victim in her living room and that he acted with intent to terrorize her. Both neighbors offered eyewitness testimony that the victim was screaming for help and to be released. Upon responding to the scene, Pendleton and Selmon saw Smith restrain the victim and force her on the couch. Various witnesses of the State, including

members of law enforcement, testified that immediately after the incident, the victim appeared visibly upset and disheveled. The record further established that the victim was eighty-eight years old at the time and had remained in a nursing home ever since the incident. Based on the State's proof, the jury convicted Smith of aggravated kidnapping and the trial court approved the verdict. We conclude that the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Smith committed aggravated kidnapping. Accordingly, he is not entitled to relief on this issue.

**III, IV & V. Evidentiary Rulings**.[1] On appeal, Smith argues that the trial court erred on multiple occasions in its evidentiary rulings. Specifically, he contends that the trial court improperly excluded his written statement to police as inadmissible hearsay. Smith also maintains that the trial court erred in admitting several hearsay statements in violation of the Tennessee Rules of Evidence and his constitutional right to confrontation. Finally, he argues that the trial court improperly permitted three of his prior convictions to be used for impeachment purposes. In response, the State argues that because these issues were not raised in Smith's motion for a new trial, they are waived for purposes of appellate review. Moreover, the State contends that these issues do not warrant plain error review and that Smith cannot demonstrate plain error. The State further argues that, in any event, the trial court did not abuse its discretion in its evidentiary rulings. Finally, the State asserts that any error was harmless and did not affect the verdict. We agree with the State.

Here, Smith raises his third, fourth, and fifth issues for appellate review without having previously included them in his motion for a new trial. Consequently, Smith has waived these issues for our consideration. See Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."); Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Moreover, we have thoroughly reviewed the record and conclude that the trial court's evidentiary rulings in these issues do not rise to the level of "plain error." See id. 36(b) ("When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."); State v. Hatcher, 310 S.W.3d 788, 808 (Tenn. 2010) (stating that a defendant waives those issues not raised in a motion for new trial and referring to the discretionary consideration of those issues as "plain error" review); see also State v. Ricky E. Scoville, No. M2006–01684–CCA–R3–CD,

---

[1]We have combined Smith's issues three, four and five for clarity.

-13-

2007 WL 2600540, at *2 (Tenn. Crim. App. Sept. 11, 2007) ("[R]arely will plain error review extend to an evidentiary issue.").

In discussing "plain error" review, the Tennessee Supreme Court has held:

This Court will not grant relief under plain error review unless five criteria are met: (1) the record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake; that is, the error was so significant that it probably changed the outcome of the trial. If any of these five criteria are not met, we will not grant relief, and complete consideration of all five factors is not necessary when it is clear from the record that at least one of the factors cannot be established. The party claiming plain error has the burden of persuading the appellate court.

Hatcher, 310 S.W.3d at 808 (citations and internal quotation marks omitted). Therefore, circumstances requiring plain error relief are rare and "recognition should be limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." State v. Adkisson, 899 S.W.2d 626, 642. To warrant reversal, "plain error must be of such a great magnitude that it probably changed the outcome of the trial." Id. (quoting United States v. Kerley, 838 F.2d 932, 937 (7th Cir. 1988)). Based on the record as a whole, we cannot conclude that the evidentiary errors that Smith alleges undermined the judicial process, affected the outcome at trial, or involved a "substantial right." See Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). We note that "[d]ecisions regarding the admission or exclusion of evidence are entrusted to the trial court's discretion. Thus, reviewing courts will not disturb these decisions on appeal unless the trial court has abused its discretion." State v. Banks, 271 S.W.3d 90, 116 (Tenn. 2008) (citing State v. Robinson, 146 S.W.3d 469, 490 (Tenn. 2004)). We further note that a trial court has broad discretion in its rulings on the admissibility of prior convictions for impeachment purposes. See State v. Waller, 118 S.W.3d 368, 371 (Tenn. 2003) (applying an abuse of discretion standard of review to evidentiary rulings regarding prior convictions). Moreover, "an evidentiary ruling ordinarily does not rise to the level of a constitutional violation." State v. Powers, 101 S.W.3d 383, 397 (Tenn. 2003) (citing Crane v. Kentucky, 476 U.S. 683, 689 (1986)).

Here, the record shows that the trial court explained its evidentiary rulings in jury-out conferences and hearings. Regarding Smith's written statement, the trial court held that it

-14-

was hearsay that the State could introduce but not the defendant. See, e.g., State v. King, 694 S.W.2d 941, 945 (Tenn. 1985) ("A declaration made by a defendant in his own favor, unless part of the res gestae or of a confession offered by the prosecution, is not admissible for the defense. A self-serving declaration is excluded because there is nothing to guarantee its testimonial trustworthiness."). Insofar as Smith complains of a constitutional violation under Crawford, we are not persuaded that the Confrontation Clause was invoked regarding the victim's statements to her neighbors. See generally Crawford v. Washington, 541 U.S. 36 (2004) (barring the use of out-of-court testimonial statements unless a declarant is shown to be unavailable and the defendant had a prior opportunity to cross-examine the declarant). Although the Court in Crawford declined to comprehensively define "testimonial," it noted that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." Crawford, 541 U.S. at 51; see also State v. Franklin, 308 S.W.3d 799, 813 (Tenn. 2010) (articulating a list of non-exclusive factors to consider when determining whether a particular statement is "testimonial"). Here, the trial court ruled that the victim's statements were admissible as "excited utterances." See Tenn. R. Evid. 803(2). Because the victim's statements were informally made to her neighbors in response to a stressful and startling event, we do not consider the statements to be "testimonial" or to implicate the right to confrontation. Finally, the record indicates that in a jury-out hearing, the trial court admitted three of Smith's prior convictions after determining that they were dissimilar from his instant charges and that their probative value to the issue of credibility outweighed any unfair prejudicial effect. See generally Tenn. R. Evid. 609; see also State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999) (articulating the two criteria that a trial court should consider when ruling on prior convictions for impeachment purposes).

After a thorough review of the record, we are unable to find any indication that the trial court's evidentiary rulings had an unfair prejudicial impact which undermined the fundamental fairness of Smith's trial. We conclude that Smith failed to establish the five criteria required for finding plain error and that he did not meet his burden of persuasion. See Hatcher, 310 S.W.3d at 808; see also State v. Hester, 324 S.W.3d 1, 56 (Tenn. 2010) ("When asserting plain error, the defendant bears the burden of persuading the appellate court that the trial court committed plain error and that the error was of sufficient magnitude that it probably changed the outcome of the trial."). The evidence at trial supported Smith's convictions and any potential error on the part of the trial court would not have affected the outcome of the trial. Accordingly, Smith is not entitled to relief on these evidentiary issues.

**VI. Sentencing**. Smith argues that his sentences are excessive. Specifically, he contends that the trial court erred in its application of enhancement factors and in failing to consider mitigating factors. He further claims that the trial court improperly imposed consecutive sentences. The State responds that the trial court imposed reasonable sentences

consistent with the purposes and principles of the Sentencing Act.  We agree with the State.

Pursuant to the 2005 amendments to the sentencing act, a trial court must consider the following when determining a defendant's specific sentence:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b) (2010).  The defendant has the burden of showing the impropriety of the sentence on appeal.  Id. § 40-35-401(d) (2010), Sentencing Comm'n Comments.

Because of the broad discretion given to trial courts by the 2005 amendments to the Sentencing Act, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed."  State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012).  "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld."  Id.  Therefore, this court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act."  Id. at 707.

Here, Smith was convicted of aggravated kidnapping, a Class B felony.  See T.C.A. § 39-13-304(b)(1) (2010).  As a Range II, multiple offender, he was subject to a sentence ranging between twelve and twenty years.  See id. § 40-35-112(b)(2) (2010).  For the aggravated burglary conviction, a Class C felony, Smith was subject to a sentence between

-16-

ten and fifteen years as a Range III, persistent offender. See id. §§ 39-14-403, 40-35-112(c)(3) (2010). Smith received the maximum sentence within each range for his convictions.

On appeal, Smith challenges the trial court's application of the enhancement factor that the "victim of the offense was particularly vulnerable because of age or physical or mental disability" to both his convictions. Id. § 40-35-114(4) (2010). Smith maintains that "the evidence failed to show that at the time of the incident, [the victim's] age or mental condition rendered her particularly vulnerable." While the State should proffer evidence other than the victim's age to establish particular vulnerability, "the evidence 'need not be extensive.'" State v. Lewis, 44 S.W.3d 501, 505 (Tenn. 2001) (quoting State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997)). In addition, "a court may consider the natural vulnerabilities attendant to the extreme ends of the aging spectrum by giving additional weight . . . to the age of the victim in those cases where a victim is extremely young or old." Id. (internal quotation marks omitted). The record supports a finding that the victim was particularly vulnerable because she was eighty-eight years old, and that her natural vulnerabilities "had some bearing on, or some logical connection to, 'an inability to resist the crime, summon help, or testify at a later date.'" Id. (quoting Poole, 945 S.W.2d at 96). In fact, the victim was not available to testify at trial and had been living in a nursing home since the incident. We conclude that the trial court did not abuse its discretion in applying this enhancement factor.

Smith also challenges the application of the enhancement factor that he "had no hesitation about committing a crime when the risk to human life was high" in the aggravated burglary conviction. Id. § 40-35-114(10) (2010). He maintains that aggravated burglary with intent to commit assault or aggravated kidnapping carries inherently high risks and that the State should have demonstrated a distinct and separate culpability. See Poole, 945 S.W.2d at 98. However, this claim is without merit because as we have previously discussed, the crime of aggravated burglary was completed upon entry into the victim's habitation. The jury was required to find intent to commit an assault beyond a reasonable doubt as an element of the crime. Any additional actions on Smith's part had criminal significance beyond what was necessary to constitute the aggravated burglary. Furthermore, the trial court made it clear that it gave more weight to the other two enhancement factors. See T.C.A. § 40-35-114(1), (4) (2010). Accordingly, we conclude that this enhancement factor was properly applied.

As a mitigating factor in the aggravated kidnapping conviction, Smith argues that the trial court should have considered that "the offender voluntarily release[d] the victim alive or voluntarily provide[d] information leading to the victim's safe release." See T.C.A. § 39-13-304(b)(2) (2010). However, this factor is simply inapplicable to the facts and

circumstances of the case. The record shows that Smith fled the scene after the victim managed to grab a knife and after the neighbors came to the door and called the police. Because the statutory enhancement and mitigating factors are advisory only, and because "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion[,]" we conclude that the trial court did not err in its sentencing determinations. See T.C.A. § 40-35-114(c)(2) (2010); State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008); see also Bise, 380 S.W.3d at 706 (holding that "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005").

Smith also contends that the trial court improperly ordered his two sentences to be served consecutively. He argues that contrary to the trial court's findings, the proof was insufficient to establish that he is a dangerous offender. Moreover, Smith maintains that the trial court should have made specific findings to support consecutive sentencing.

Where a defendant is convicted of one or more offenses, the trial court generally has discretion to decide whether the sentences shall be served concurrently or consecutively. T.C.A. § 40-35-115(a), (b) (2010). This court will not disturb the trial court's determination of concurrent or consecutive sentences absent an abuse of discretion. State v. Blouvet, 965 S.W.2d 489, 495 (Tenn. Crim. App. 1997). A trial court may order multiple offenses to be served consecutively if it finds by a preponderance of the evidence that a defendant fits into at least one of seven categories enumerated in code section 40-35-115(b):

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the

time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b) (2010). The finding of a single category is sufficient to authorize a court to impose consecutive sentences. Id., Sentencing Comm'n Comments. An order of consecutive sentencing must be "justly deserved in relation to the seriousness of the offense." Id. § 40-35-102(1) (2010). In addition, the length of a consecutive sentence must be "no greater than that deserved for the offense committed." Id. § 40-35-103(2) (2010).

Here, the court determined that Smith was a dangerous offender. See id. § 40-35-115(b)(4) (2010). Although Smith argues that the trial court erred in determining that he was a dangerous offender, we conclude that the trial court properly applied this factor before imposing consecutive sentencing. Regarding this subsection, the Tennessee Supreme Court has stated:

> "Proof that an offender's behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high, is proof that the offender is a dangerous offender, but it may not be sufficient to sustain consecutive sentences. Every offender convicted of two or more dangerous crimes is not a dangerous offender subject to consecutive sentences; consequently, the provisions of [s]ection 40-35-115 cannot be read in isolation from the other provisions of the Act. The proof must also establish that the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender."

State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002) (quoting State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995)) (emphasis added). Unlike the other six subsections, the trial court must make additional factual findings for the "dangerous offender" factor because it is "the most subjective and hardest to apply." Id. (quoting State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999)). Here, the court specifically found "that the circumstances surrounding the commission of this offense [were] aggravated based upon the victim's age and her mental issues" and "that confinement for an extended period of time is necessary to protect society from the defendant's unwillingness to lead a productive life and the defendant's resort to

criminal activity in furtherance of an anti-societal life-style [sic]." The court also determined that the aggregate length of Smith's sentences was "reasonably relate[d] to the offense[s]" for which Smith was convicted. The court repeatedly referenced Smith's "extensive record" and lengthy criminal history throughout the sentencing hearing. The trial court's finding "that [Smith] has a long history of criminal convictions and behavior" is amply supported by the record. The record shows that the trial court made the additional factual findings required to determine that Smith was a dangerous offender. Moreover, we agree with the State that Smith's long history of criminal convictions also provides a sufficient basis for the trial court to impose consecutive sentencing. See T.C.A. § 40-35-115(b)(2) (2010). Accordingly, we conclude that the trial court properly exercised its discretion in ordering Smith to serve his sentences consecutively.

The record shows that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing consecutive, within-range sentences of confinement in this case. Therefore, Smith has failed to establish that the trial court abused its discretion in imposing an effective thirty-five-year sentence, and he is not entitled to relief.

**VII. Cumulative Error**. Smith claims the cumulative effect of the alleged errors rendered his trial as fundamentally unfair. The State argues that reversal is not required because Smith failed to establish any error affecting the outcome of the judgment. We agree with the State. Because we have already determined that Smith is not entitled to relief on any of the previous issues, we conclude that there is no cumulative error that affected his right to a fair trial. The United States Constitution and the Constitution of Tennessee protect a criminal defendant's right to a fair trial, but it does not guarantee a perfect trial. See Hester, 324 S.W.3d at 76. Moreover, "circumstances warranting the application of the cumulative error doctrine to reverse a conviction or sentence remain rare." Id. We have thoroughly reviewed the record and agree with the State that the proof overwhelmingly supported the jury's verdict. Accordingly, Smith is not entitled to relief on this issue.

## CONCLUSION

After a thorough review of the record, we conclude that there is no reversible error. Accordingly, we affirm the judgments of the Shelby County Criminal Court.

_____
CAMILLE R. McMULLEN, JUDGE